IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| CYNTHIA LYNN WELCH, | ) |
| --- | --- |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:09cv376 (AJT/IDD) |
| | ) |
| GENE M. JOHNSON, | ) |
| Director, Department of Corrections, | ) |
| | ) |
| Respondent. | ) |

## Memorandum Opinion

On April 7, 2009, Petitioner Cynthia Welch ("Welch") filed her petition for a writ of habeas corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel after her conviction for first degree murder on November 14, 2003. This matter is before the court on Respondent Gene Johnson's Motion to Dismiss (Doc. No. 5). Upon consideration of the petition and the opposition thereto, the Motion to Dismiss (Doc. No. 5) will be granted.

### Background and Procedural History

On November 14, 2003, a jury in the Circuit Court of Stafford County convicted Welch on charges of first degree murder in connection with the death of her son, child cruelty, and child neglect. The court sentenced Welch to life in prison plus fifteen years. The evidence at trial indicated that Welch's son was born on August 30, 2001 and appeared to be a normal, healthy newborn.[1] However, on November 6, 2001, during a doctor's visit, the pediatrician expressed concern about the baby's slight weight gain of 2 pounds, 6 ounces, and diagnosed the child's

---

[1] All references to the state court's decision refer to the Stafford County opinion denying Welch's petition for habeas corpus because it was the last reasoned state court decision. That decision is imputed to the Supreme Court of Virginia because that court refused the appeal without further explanation. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

condition as "failure to thrive." At a follow up appointment two days later, the doctor noted that Welch's son had gained 5 ounces. Welch then missed her next appointment with the pediatrician, which was scheduled for 7-10 days later. On November 27, 2001, approximately two weeks later, Welch's son died.

On November 28, 2001, Dr. John Fernandes ("Dr. Fernandes") performed an autopsy on Welch's son. Dr. Fernandes found that he was dehydrated, emaciated, underweight, and thin compared to babies of a similar age. He further found that Welch's son did not have food in his stomach or digestive tract and had less than a teaspoon of urine in his body. Dr. Fernandes testified that Welch's son had very little fat in his body, a conclusion consistent with malnourishment. Dr. Fernandes concluded that Welch's son died because of a "failure to thrive," due to having food withheld or improper feeding. Dr. Fernandes did not find in Welch's son any physical conditions that rendered him incapable of consuming food and, based on additional testing, eliminated metabolic disorders as a possible cause of Welch's son's failure to thrive.

## Procedural History and Standard of Review

Procedurally, before this Court may entertain her habeas petition, Welch must first exhaust her state court opportunities to have heard the factual and legal claims presented in her federal habeas petition. 28 U.S.C. § 2254(b); *Granberry v. Greer*, 481 U.S. 129, 134 (1987). Welch satisfied this requirement when she presented her state habeas petition to the Circuit Court of Stafford County, which denied the habeas petition on June, 9, 2008, followed by a denial of her appeal from that decision by the Supreme Court of Virginia on January 9, 2009. This petition was filed on April 7, 2009, within one year of the Supreme Court of Virginia's denial, and is therefore timely under 28 U.S.C. § 2254.

Under 28 U.S.C. § 2254(d), this Court can grant habeas relief only if the decision in state court regarding Welch's habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *McNeill v. Polk*, 476 F.3d 206, 210 (4th Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

## II. Analysis

As she did in her state habeas proceedings, Welch seeks relief in this Court on the grounds that she was denied effective assistance of counsel at her state court trial, as guaranteed by the Sixth Amendment. Welch was entitled to the effective assistance of counsel at her state court trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984), and the lack of effective assistance of counsel can require the reversal of her state court criminal conviction. *Id.* at 686. In order to establish a valid claim for ineffective assistance of counsel sufficient to reverse a conviction, Welch must make two showings. First, she must establish that her counsel's performance fell below the applicable professional standard to such an extent that her counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, Welch must show that her counsel's deficiencies "prejudiced the defense." *Id.* This component requires that the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In evaluating the performance of trial counsel, a highly deferential standard applies; and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689

3

Welch bases her ineffective assistance of counsel claim on (1) her counsel's failure to call as a witness Sandra Gregoussis ("Gregoussis") to testify in support of Welch's claim that Welch had fed her son on the day before his death; and (2) her counsel's failure to cross-examine the government's expert on the possibility that Welch's son had a metabolic disorder which might have contributed to his death.

### A. Counsel's alleged failure to call a witness.

The first claim of ineffective assistance of counsel is that counsel should have called Gregoussis to testify that Welch had fed her son the night before his death. In an affidavit, Welch's trial attorney explained that he did not call Gregoussis because she had been previously convicted of child abuse, was incarcerated at the time, and was under a court order not to have contact with children. Welch's counsel concluded that these facts would have, on balance, eliminated any value as a witness helpful to Welch's case, especially since there were other witnesses available to testify for the same purpose. The state court decided that counsel's decision not to call Gregoussis was a matter of trial strategy and accordingly did not satisfy the *Strickland* standard.

The state courts' decision with respect to this claim of ineffective assistance was a reasonable application of *Strickland* and therefore not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). In this regard, the state court surely recognized that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689 (noting that the court must eliminate "the distorting effect of hindsight" and evaluate counsel's strategy *ex ante*, from counsel's perspective at the

time). As the state court noted, Welch's counsel called three other witnesses who all testified in support of Welch's claim that she fed her child the night before his death.[2] The state court's conclusion that Welch's counsel made a valid strategic decision in refusing to call a witness so vulnerable to cross examination and that the lack of this fourth witness did not have a prejudicial effect on the outcome of the case was a correct application of Strickland.

**B. Counsel's Failure to Present or Cross Examine an Expert Witness.**

Welch also argues that her counsel's failure to cross-examine Dr. Donald Chase ("Dr. Chase") regarding the possibility that the baby had a metabolic disorder (specifically, a fatty acid oxidation disorder) was deficient and prejudicial. Welch contends that if her counsel had cross-examined Dr. Chase on the issue, Dr. Chase would have wavered from his initial opinion that the autopsy had ruled out any metabolic disorder. As a result, she continues, such cross examination would have supported the defense's theory that the child's death was due to natural causes; and that once Dr. Chase wavered in his position, the jury would have reasonable doubt as to the cause of the child's death. The state court considered these arguments and concluded that counsel's decision not to cross-examine Dr. Chase or obtain an expert witness that specialized in metabolic disorders did not represent ineffective assistance of counsel. This Court agrees.

In an affidavit, defense counsel explained that the defense's expert, Dr. Jack Daniel, ruled out a metabolic disorder out after a second round of tests. Relying on that opinion, Welch's counsel decided not to pursue the metabolic disorder defense, instead arguing that Welch's son had non-metabolic medical issues that caused his death. Given that defense counsel's own expert concluded that Welch's son did not have a metabolic disorder, counsel's subsequent decision not to pursue that line of defense did not represent ineffective assistance of counsel, and the state

---

[2] Welch called a nutritionist as well as her son's maternal and paternal grandmothers.

court's application of *Strickland* was correct. Defense counsel was not required to retain an additional expert, even one with more expertise in metabolic disorders, to pursue a certain line of defense. *See Poyner v. Murray*, 964 F.2d 1404, 1418-1419 (finding that counsel who did not "shop around" and retained expert witnesses who ultimately do not agree with certain theories of defense was not ineffective).

## C. Cumulative Effect and Request for an Evidentiary Hearing

Welch argues that even if each of these claims of ineffective assistance, standing alone, is insufficient under the *Strickland* test, the aggregate effect of these two allegations of ineffective assistance create a reasonable probability there would have been a different result but for counsel's errors. The Court has carefully considered these issues and must conclude that Welch's counsel made permissible strategic trial decisions, both when those decisions are considered separately or collectively. That being the case, Welch is not entitled to seek relief on the grounds that counsel should have made different decisions. *See Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998) (noting that cumulative-error analysis evaluates only the cumulative effect of errors, not the cumulative effect of non-errors).

## III. Conclusion

The state court's decision on Welch's state court habeas petition was not contrary to, or an unreasonable application of, federal law, and was based on a reasonable application of the facts in light of the evidence presented. Welch's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is therefore denied. Further, Welch's request for a hearing is denied because there are no material facts in dispute.

Accordingly, her petition is denied. An appropriate Order will follow.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 11, 2010